*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2000 FED App. 0098P (6th Cir.)
File Name: 00a0098p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

RANDAL CROCKER,
  *Plaintiff-Appellant,*

   *v.*     No. 98-5700

MARVIN T. RUNYON,
Postmaster-General,
   *Defendant-Appellee.*



Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 96-00151—Dennis H. Inman, Magistrate Judge.

Argued: September 21, 1999

Decided and Filed: March 22, 2000

Before: BOGGS and DAUGHTREY, Circuit Judges; and
McKINLEY,[*] District Judge.

_____

[*]The Honorable Joseph H. McKinley, Jr., United States District Judge for the Western District of Kentucky, sitting by designation.

———————————

**COUNSEL**

**ARGUED:** W. Douglas Collins, EVANS & BEIER, Morristown, Tennessee, for Appellant. Helen C.T. Smith, UNITED STATES ATTORNEY, Greeneville, Tennessee, for Appellee. **ON BRIEF:** W. Douglas Collins, EVANS & BEIER, Morristown, Tennessee, for Appellant. Helen C.T. Smith, UNITED STATES ATTORNEY, Greeneville, Tennessee, for Appellee.

———————————

**OPINION**

———————————

BOGGS, Circuit Judge. Randal Crocker charges that the United States Postal Service refused to hire him due to his disability, in violation of the Rehabilitation Act of 1973. Crocker pled both disparate treatment and disparate impact causes of action below, arguing that he was able to perform the essential functions of the position he sought despite his disability. Because Crocker failed to offer medical evidence contemporaneous with his nonhiring to contradict the evidence upon which the Postal Service relied, we hold that he did not meet his burden of proof for either cause of action. Accordingly, we affirm both the district court's dismissal on summary judgment of the disparate treatment claim and its post-trial dismissal of the disparate impact claim.

I

Mr. Crocker suffers from Reflex Sympathetic Dystrophy, a neurological disorder that manifests itself in him as excruciating pain in his right thigh from the knee to the groin if he puts too much weight on his right foot. Though expressing reservations, Postmaster William Dyer hired Crocker contingent on his passing a pre-employment physical. Dr. Hubert Hill, a physician under contract to do physicals for the Postal Service, examined Crocker on November 29, 1994.

impact theory, judgment was properly granted in favor of the [Postal Service] on this claim.

*Gantt*, 143 F.3d at 1048 (discussing the problems associated with applying a disparate impact analysis to an age discrimination claim). The number of other disabled individuals hired by the Postal Service, including one hired for the other position open when Crocker applied, indicates no singling out of disabled applicants. The fact that a number of disabled people passed the Postal Service's pre-employment physical for various jobs also suggests that it was not used as a means to exclude disabled people from employment in jobs they were capable of performing. The evidence is that Crocker was not hired because he would not be able to perform the essential elements of the job he sought, which is a permissible reason under the Rehabilitation Act.

IV

Because Crocker could not make a prima facie showing that he was "otherwise qualified" for the position for which he was not hired, the judgment of the magistrate judge is AFFIRMED.

In any event, a disparate impact theory is unavailable under the facts of this case. A disparate impact framework involves burden shifting, and this court has held that burden shifting is inappropriate in Rehabilitation Act cases such as this where the employer relies in part on the employee's disability in finding the employee not otherwise qualified for the job. "[W]hen an employer admits (or the evidence establishes) that its decision was based upon the employee's disability, direct evidence of discrimination exists [and] . . . application of the *McDonnell Douglas* burden-shifting framework is inappropriate." *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1180 (6th Cir. 1996). The disputed factual question in this and similar cases is whether the employee can perform the essential functions of the job. The burden to prove this rests on the employee and "can be resolved through traditional methods of proof." *Id.* at 1183. "Unlike Title VII cases, where race or sex will almost never be an acceptable reason for an employment decision adverse to a qualified employee, the Rehabilitation Act permits an employer to make a decision because of a handicap if the handicap is not the sole reason for the decision." *Burns*, 91 F.3d at 841. Thus, a disparate impact analysis was inappropriate to apply to this case, which should have been approached under the framework elaborated in *Monette* and *Burns*. *See Mitchell v. Crowell*, 975 F. Supp. 1440, 1446 (N.D. Ala. 1997) (applying *Monette* and *Burns* in a Rehabilitation Act case to grant summary judgment to the employer where the employee did not prove that she was otherwise qualified for the position from which she was terminated).

Even if a disparate impact claim were allowed, to establish a prima facie case:

Plaintiff would have to support [his] claim by offering "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the [nonhiring of employees] ... because of their membership in a protected group." *Abbott v. Federal Forge, Inc.*, 912 F.2d 867, 872 (6th Cir. 1990). Given [his] failure to present any evidence at all to support [his] adverse

Dr. Hill determined that Crocker failed the physical because he could not walk without crutches. Dr. John Dougherty, a neurologist, performed a second pre-employment physical on Crocker on December 28, 1994. He likewise determined that Crocker's inability to walk without the use of crutches made him unable to perform the essential functions of the letter carrier position.

Based on the opinions of Drs. Hill and Dougherty, Dyer decided not to hire Crocker after he failed the physical. The Postal Service notified him of his nonhiring in a letter date-stamped July 7, 1995. As it must for any veteran who has a compensable disability, the Postal Service processed Crocker's nonhiring through the Office of Personnel Management, a federal agency separate from the Postal Service. The letter notifying Crocker of his nonhiring also advised him of his right to submit supporting material to the OPM regarding his automatic appeal within 15 days of receiving the letter. It noted that "[t]he best evidence to provide is an objective medical finding from a board certified specialist in the field that deals with your particular problem." The OPM sent Crocker a letter date-stamped August 18, 1995 informing him that his nonhiring had been upheld, but indicating that he should forward to that office any "additional specific medical documentation that contradicts these findings" about his capacity to work.

Rather than seek a contrary medical opinion when he received either of these letters, Crocker filed a discrimination complaint with the Postal Service. By law, such a complaint had to be brought within 45 days of the July 7 letter informing Crocker of his nonhiring. Crocker first contacted the Postal Service about filing a complaint on November 4, 1995, 120 days after being notified of his nonhiring. Because the complaint was filed in an untimely fashion, the Postal Service rejected it in a letter to Crocker date-stamped January 4, 1996. He filed the discrimination complaint at issue in this appeal on April 3, 1996. The medical examinations Crocker used at trial to argue his fitness for the letter carrier position took place in December 1996 and April 1997. Those examinations

cannot prove that Crocker was physically capable of performing the job at the time he was not hired. Even if he would have passed the physicals later, as he now contends, that does not mean he should have passed the earlier ones. Two years separate the two sets of evaluations, and, significantly, Crocker changed the treatment for his RSD in the intervening period. Crocker complains that he did not have much time to seek a medical opinion supporting his case after receiving the January 4, 1996 letter. That argument ignores the fact that Crocker was on notice as of July 7, 1995 that he needed contrary medical evidence to dispute his nonhiring.

Crocker filed suit in federal district court on April 3, 1996, alleging that the Postal Service failed to hire him because he was disabled. The parties consented below to the jurisdiction of a United States Magistrate Judge with an appeal lying directly to this court. *See* 28 U.S.C. § 636(c). The Postal Service moved for summary judgment on the disparate treatment claim and the magistrate judge granted the motion, reasoning that Crocker was not otherwise qualified for the position since he could not perform its essential functions and that he had shown no proof of animus on the part of the Postal Service. However, the magistrate judge discerned a separate disparate impact claim in the complaint on which he conducted a bench trial. Under this theory, the criteria used by the Postal Service to assess physical abilities disproportionately impact otherwise qualified persons with RSD. After trial, the court dismissed the latter claim as well, determining again that Crocker was not otherwise qualified for the letter carrier position. We review a magistrate judge's decision to grant summary judgment *de novo*. In cases referred to a magistrate judge by a district judge for decision with consent of the parties under 28 U.S.C. § 636(c), we review the magistrate judge's findings of fact for clear error, as we would the findings of a district judge. *See Sherri A.D. v. W.N. Kirby*, 975 F.2d 193, 207 n.25 (5th Cir. 1992); *Proctor v. North Carolina*, 830 F.2d 514, 517 (4th Cir.1987) ("Ordinarily, then, in an appeal from a decision rendered by a magistrate in a § 636(c) proceeding, the magistrate's

*sub nom. Alexander v. Choate*, 469 U.S. 287 (1985). This court has recognized in an unpublished opinion that the Fifth and Eleventh Circuits allow disparate impact causes of action for discrimination under the Rehabilitation Act. *See Cook v. Hairston*, No. 90-3437, 1991 WL 253302, at *6 (6th Cir. Nov. 26, 1991), *citing Georgia State Conf. of Branches of NAACP v. Georgia*, 775 F.2d 1403 (11th Cir. 1985), *and Prewitt v. United States Postal Serv.*, 662 F.2d 292 (5th Cir. 1981). The *Choate* court assumed without deciding that §504 prevented some kinds of disparate impact on the handicapped, but then found no violation in the program at issue in that case. *See Choate*, 469 U.S. at 299 ("While we reject the boundless notion that all disparate-impact showings constitute prima facie cases under §504, we assume without deciding that §504 reaches at least some conduct that has an unjustifiable disparate impact upon the handicapped"). Thus it remains "an open question whether section 504 forbids . . . 'conduct that has an unjustifiable disparate impact' on the disabled." *Sandison v. Michigan High School Athletic Ass'n*, 64 F.3d 1026, 1032 (6th Cir. 1995).

There is good reason to believe that a disparate impact theory is not available under the Rehabilitation Act. Although Title VII contains a provision allowing an overtly discriminatory hiring criterion when it is a bona fide occupational qualification, that provision has proven much less expansive in practice than the Rehabilitation Act's safe harbor provision for nonhiring. *Compare* 42 U.S.C. § 2000e-2(e), *with* 29 U.S.C. § 794. The Rehabilitation Act's "otherwise qualified" language specifically allows for disabled people to be disparately affected by legitimate job criteria, so a wholesale importing of Title VII's disparate impact cause of action into the Rehabilitation Act context might be inappropriate. *Cf. Mullin v. Raytheon Co.*, 164 F.3d 696, 700 (1st Cir. 1999) (noting the difficulties inherent in transporting disparate impact analysis from Title VII into cases brought under the Age Discrimination in Employment Act following the Supreme Court's decision in *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993)).

§ 1630.2(r).  Carrying heavy mail boxes and pushing a heavy hamper down a loading ramp every day while hopping on one leg, as Crocker proposes, would not be safe.

This case is not like *Holiday v. City of Chattanooga*, a recent nonhiring case brought under the Americans with Disabilities Act.  There the applicant's status as "otherwise qualified" was also in dispute.  *See Holiday v. City of Chattanooga*, No. 98-5619, 2000 FED App. 0087P, (6th Cir. March 10, 2000).  In that case, the physician failed to investigate whether Holiday's HIV caused him any problems that would affect his performance on the job, and his medical opinion contradicted contemporaneous evidence of Holiday's ability to serve as a police officer despite having asymptomatic HIV.  *See id.*, slip op. at 9-10.  There was also evidence of anti-HIV stereotyping by the hiring authority in the case, creating a genuine issue of material fact as to the employer's "good-faith reliance" on the medical opinion received. *See id.* at 12-13.  None of those elements is present here.  The medical opinions of the two original examining physicians determined that Crocker could not do the kinds of physical activities required by the job, and there was no evidence of any anti-RSD stereotype at work.  The Postal Service here relied in good faith on the two medical opinions it received, and Crocker did not offer any contemporaneous medical evidence to contradict those opinions.  Crocker therefore did not create a genuine issue of material fact, and the magistrate judge's granting of summary judgment to the Postal Service on the disparate treatment claim was altogether appropriate.

### III

Crocker's appeal of his disparate impact claim fails for much the same reasons.  Initially, however, it should be noted that this circuit has not explicitly recognized the availability of a disparate impact cause of action under the Rehabilitation Act.  One earlier effort to do so on a broad basis in *Jennings v. Alexander* was rebuffed by the Supreme Court.  *See Jennings v. Alexander*, 715 F.2d 1036 (6th Cir. 1983), *rev'd*

---

findings of fact are reviewed only to the extent of determining whether such findings are clearly erroneous"); *See generally* 1 Steven A. Childress and Martha S. Davis, Federal Standards of Review § 2.03(D) (3d ed. 1999).  "A finding is clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Russell*, 156 F.3d 687, 690 (6th Cir. 1998), *citing United States v. United States Gypsum Co.*, 333 U.S. 364, 365 (1948).

### II

To make out a claim under the Rehabilitation Act, a plaintiff in a covered position must establish that he is: 1) an individual with a disability under the Act, 2) otherwise qualified for the job with or without a reasonable accommodation, and 3) being discriminated against solely because of his handicap.  *See Burns v. City of Columbus, Dep't of Pub. Safety*, 91 F.3d 836, 841 (6th Cir. 1996), *citing Doherty v. Southern College of Optometry*, 862 F.2d 570 (6th Cir. 1985).  It is not enough for the plaintiff to show that his handicap contributed to the nonhiring, because the Rehabilitation Act "does not forbid decisions based on the actual attributes of the handicap." *Pesterfield v. Tennessee Valley Auth.*, 941 F.2d 437, 443 (6th Cir. 1991), *quoting Anderson v. University of Wisconsin*, 841 F.2d 737 (7th Cir. 1988).  Assuming that the other elements are met,[1] in a case

---

[1]If, as Crocker attests, his crutches truly do not "substantially limit his major life activities," then the magistrate judge erred in determining that Crocker is disabled.  *See Sutton v. United Air Lines, Inc.*, 119 S. Ct. 2139 (1999) (holding that corrective measures must be taken into account in judging whether an individual is disabled); *Murphy v. United Parcel Serv., Inc.*, 119 S. Ct. 2133 (1999) (holding that an employee did not have a disability since the medication he took prevented his major life activities from being substantially limited); *Albertson v. Kirkinburg*, 119 S. Ct. 2162 (1999) (holding that the existence of a disability must be determined from the actual effect of the impairment on the life of the given individual); *See also Gilday v. Mecosta County*, 124 F.3d 760, 767-68 (6th Cir. 1997) (presaging the holdings in these cases).  Because we can

such as this where the defendant admittedly "made the decision *because of* the handicap . . . the sole factual issue left for resolution is an objective one — whether the plaintiff is qualified for the position or program despite the handicap, with or without reasonable accommodation." *Burns*, 91 F.3d at 842. The second and third elements of the claim collapse into one question, because if a plaintiff can show that he is otherwise qualified, it will be virtually impossible in these circumstances for the employer to show that the nonhiring was not solely due to the handicap.

Hence, for Crocker to show that he was otherwise qualified for the position, he has to show that he could have met the physical demands of the job. The Postal Service relied on the opinions of two private physicians, including a neurological specialist, in reaching its decision not to hire Crocker. Crocker argues that the subsequent testimony of two other evaluators who performed more elaborate examinations renders reliance on the earlier medical opinions unreasonable. Even if the earlier medical opinions were demonstrably flawed, the Postal Service's reasonable reliance upon them is not discriminatory. *See Severino v. North Myers Fire Control Dist.*, 935 F.2d 1179, 1182 (11th Cir. 1991). So long as the Postal Service relied on those opinions in good faith in determining that Crocker could not do the job, the failure to hire him was justified. *See Pesterfield*, 941 F.2d at 443. Moreover, Crocker offered no proof that he was physically capable of performing the job at the time he was not hired. That he was aware of the option to obtain another medical opinion when he was refused employment and chose not to may mean he was not confident then about the outcome of any such additional evaluation.

Crocker makes much of the fact that the job descriptions sent to Drs. Hill and Dougherty were incomplete, and that Human Resources Manager Charles Brantley sent Dr. Hill a

---

affirm the district court's finding that Crocker was not otherwise qualified for the job, we need not reach this issue.

letter prejudging Crocker's fitness for the job. Taken together, Crocker argues, these conditions preclude a claim of good-faith reliance by the Postal Service on the earlier medical opinions. As the lower court found, there is no evidence that Crocker was not hired for any reason other than failing the physicals. Indeed, Brantley's letter notes that Crocker "was using crutches and dragging his feet the last time I saw him." If anything, that serves as further contemporaneous evidence that Crocker had not adapted as well to his crutches at that time as he has now. The incomplete job descriptions did not affect the medical finding that Crocker could not walk without crutches relied upon by the Postal Service.

Crocker also complains that the Postal Service did not offer him any accommodation, but since Crocker did not suggest until trial that he needed an accommodation, the Postal Service had no legal duty to provide him one. *See Kaltenberger v. Ohio College of Podiatric Med.*, 162 F.3d 432, 437 (6th Cir. 1998); *See also Gantt v. Wilson Sporting Goods*, 143 F.3d 1042, 1046 (6th Cir. 1998). When the lack of an accommodation became an issue at trial, the Postal Service offered Crocker an accommodation in the form of a more sedentary job, which he refused. Crocker is not an otherwise qualified individual once he rejects an offer of reasonable accommodation. *See Keever v. City of Middletown*, 145 F.3d 809, 811-812 (6th Cir. 1998). Moreover, the failed physical indicated that no reasonable accommodation was possible for the position Crocker sought. The magistrate judge's finding that there "does not appear to be any reasonable way in which plaintiff's disability could be accommodated" is not clearly erroneous. In particular, the trial court found that Crocker, at the time he applied for the job, could not perform his duties without endangering the safety of himself and others. Under 42 U.S.C. § 12113(b), a finding that Crocker poses a direct safety threat to himself or others renders him not otherwise qualified. A direct threat entails "a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation." 29 C.F.R.