RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0369p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

MARTIN JAKUBOWSKI,

　　　　　　*Plaintiff-Appellant,*

　　　*v.*

THE CHRIST HOSPITAL, INC., and PHILIP
DILLER,

　　　　　　*Defendants-Appellees.*

No. 09-4097

_____

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 08-00141—S. Arthur Spiegel, District Judge.

Argued: October 21, 2010

Decided and Filed: December 8, 2010

Before: MARTIN, COLE, and CLAY, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Richard C. Haber, HABER POLK LLP, Cleveland, Ohio, for Appellant.
Michael A. Roberts, GRAYDON HEAD & RITCHEY LLP, Cincinnati, Ohio, for
Appellees. **ON BRIEF:** Richard C. Haber, HABER POLK LLP, Cleveland, Ohio, for
Appellant. Michael A. Roberts, Katherine M. Lasher, GRAYDON HEAD & RITCHEY
LLP, Cincinnati, Ohio, for Appellees.

　　　　MARTIN, J., delivered the opinion of the court, in which CLAY, J., joined.
COLE, J. (pp. 13–16), delivered a separate opinion concurring in the judgment.

_____

## OPINION

_____

　　　　BOYCE F. MARTIN, JR., Circuit Judge. Plaintiff-appellant Martin Jakubowski

suffers from Asperger's Disorder[1] and was formerly employed as a family practice

---

[1] Asperger's Disorder is characterized by "severe and sustained impairment in social interaction
. . . and the development of restricted, repetitive patterns of behavior, interests, and activities." AMERICAN
PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 80 (4th ed.
2000). "The disturbance must cause clinically significant impairment in social, occupational, or other

medical resident at The Christ Hospital, Inc. in Cincinnati, Ohio. He filed suit against Christ Hospital and the director of his program there, Dr. Philip Diller, after he was terminated from his position. Jakubowski claims that Christ Hospital and Diller terminated him because of his Asperger's and failed to reasonably accommodate this disability, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112, the Rehabilitation Act, 29 U.S.C. § 794, and Ohio Revised Code § 4112.02. Christ Hospital and Diller moved for summary judgment, which the district court granted. Jakubowski now appeals. We **AFFIRM**.

## I. BACKGROUND

In 2003, Jakubowski graduated from the University of Medical Sciences in Poznan, Poland. He unsuccessfully attempted to obtain a medical residency in the United States through the "match" process, by which hospitals and residency prospects choose each other. However, he obtained a residency position at St. Elizabeth Hospital in Youngstown, Ohio through the "scramble" process, which allows applicants who were unsuccessful in the match process to find remaining residency positions. In July 2005, he began his residency, but struggled and did not perform well. He was placed in a remediation program in October to improve his areas of weakness, but at the end of his first year, he was informed that St. Elizabeth would not renew his contract for a second year.

Recognizing that his clinical and patient skills were weak compared to graduates of American medical schools, Jakubowski enrolled at the New York Medical College for a year-long program of supervised clinical training. There, he received mixed reviews, with the negative evaluations focused on his lack of communication skills.

After this program, Jakubowski looked for a second residency. He again participated in the match process with no success, but found a residency through the scramble process at Christ Hospital in Cincinnati. He began his residency there in July

---

important areas of functioning . . . ." *Id.* "The impairment in reciprocal social interaction is gross and sustained. There may be marked impairment in the use of multiple nonverbal behaviors . . . to regulate social interaction and communication . . . ." *Id.*

2007. During an initial month-long orientation, he again received mixed reviews. While he placed in the ninetieth percentile nationally on a medical knowledge exam, he performed poorly on an emotional intelligence exam, and supervising physicians noted his weak communication skills with patients. Supervisors identified self-awareness, social competence, and relationship management as areas of deficiency for Jakubowski. Additionally, an attending physician, Dr. Jeffrey Morgeson, observed that when working with patients, Jakubowski had poor organizational skills, skipped standard procedures in his examinations, and performed procedures incorrectly.

At the conclusion of orientation, Diller suspected that Jakubowski suffered from a cognitive disorder. Diller referred him to Dr. Linda Hartmann for a psychological evaluation, and specifically to determine if he had Asperger's. Diller did not make his suspicions known to other attending physicians at Christ Hospital.

During Jakubowski's first night on call after orientation, he was unable to keep up the necessary pace in seeing patients. His supervising physician had to relieve him, and noted that Jakubowski could not properly relay instructions between healthcare professionals. During the first week of August, one attending physician, Dr. Ellis, criticized his performance and recommended that he be placed on remediation. He noted that Jakubowski had an average to below average medical knowledge, had difficulty exploring possible diagnoses, did not communicate with the nurses well, and had difficulty answering, and communicating on, the phone. Another attending physician, Dr. Bernheisel, remarked that Jakubowski could not be trusted and had given dangerous orders that would have harmed patients if not caught by other physicians. In another instance, Jakubowski wrote an unclear order for medication for a patient that, if interpreted and administered literally, would have killed the patient. Jakubowski never actually harmed a patient during his residency.

On August 8, Hartmann sent a letter to Diller explaining that she suspected that Jakubowski had Asperger's, but she could not be sure without speaking to Jakubowski's family about his past.

On August 24, Bernheisel informed Jakubowski that he had failed his inpatient rotation and he would have to repeat it.

On August 25, Hartmann formally diagnosed Jakubowski and informed him that he had Asperger's. That same day, Jakubowski received a letter from Diller informing him that he would be terminated from his residency on September 30. At that time, Diller had not yet received Hartmann's letter explaining her potential diagnosis because it had been lost in office mail. Jakubowski met with Diller, Bernheisel, and another attending physician, Dr. Jeffrey Schlaudecker, that same day and informed them that he had been diagnosed with Asperger's.

On September 11, Jakubowski's attorney sent a letter to Christ Hospital proposing that it accommodate Jakubowski's disability with "knowledge and understanding." The letter explained that Jakubowski could successfully continue his residency if the other physicians and nurses were made aware of his condition and the symptoms and triggers of Asperger's. Jakubowski conceded he would have to improve his communication skills with patients, but insisted that he could do this alone. The parties then met to discuss the proposed accommodation, at which time Diller informed Jakubowski that Christ Hospital did not have sufficient resources to comply with the proposal. However, Diller offered to assist Jakubowski in finding a residency in pathology, a field that requires little or no patient interaction.

Jakubowski appealed his termination to the graduate medical education committee at Christ Hospital. On December 18, the committee affirmed his termination.

Lynda Geller, Ph.D. presented expert testimony during discovery that there are many ways Christ Hospital could have accommodated Jakubowski's Asperger's. She also presented evidence of a remediation program that Christ Hospital had previously offered a struggling resident. The previous resident had difficulty following instructions from other physicians for treatment, adjusting treatment plans as new information was obtained, applying medical knowledge to clinical interactions with patients, and making timely diagnoses. As part of his remediation program, Christ Hospital paused his rotation for four months, assigned an attending physician to monitor him while he saw

patients three mornings a week, assigned a medical faculty member to monitor him one morning a week, assigned Bernheisel to work with him and fifteen patients a month, gave him a full day every week to study, and assigned him a personal mentor to improve his medical knowledge. If the resident did not improve in the initial four months, he would be able to continue the remediation for an additional four months. Geller opined that this resident's shortcomings were similar to Jakubowski's, and that Christ Hospital could have offered a similar remediation program to Jakubowski. Geller testified that her recommendations had nothing to do with patient safety. She did not purport to have any expertise in patient safety, and had no opinion regarding how Jakubowski's Asperger's would affect patient safety. Geller's testimony and observations regarding the previous resident were not available when Jakubowski and Diller met to discuss accommodations as she was an expert witness obtained later for litigation purposes. Jakubowski did not propose a remediation program as part of his proposed accommodation at the meeting with Diller.

Jakubowski described his condition during discovery, saying that he has trouble communicating his thoughts to people and processing what people communicate to him. He also said he could have trouble gathering data.

A medical expert, Dr. Jeffery Chaudhari, who had previously worked with Jakubowski in New York, testified during discovery for Christ Hospital. He opined that being a physician requires excellent skills in relating to patients and co-workers. He also rated Jakubowski's performance as "sub-par," and remembered that Jakubowski had difficulty relating to colleagues and gathering information from a patient and integrating it. Another medical expert who had experience with Jakubowski at St. Elizabeth, Dr. Rudolph Krafft, also testified during discovery for Christ Hospital. He stated that "getting information from patients accurately" is "very important" for a physician, and that a physician would be "unqualified" if he had "no ability" to pick up on the subtleties of human interaction.

Two other physicians at Christ Hospital, Drs. Vasyl and Martin, evaluated Jakubowski with the following descriptions: "clueless, reports data incorrectly, not trusted, has no concept of his patients, leaves out outpatient information, says yes to

things but has not done [them], lack of insight, lack of organization, unable to communicate, lack of attention," and "presents untruth [sic]."

Dr. Donald Swikert, director of the Family Medicine Residency Program at St. Elizabeth, worked with Jakubowski there and also testified during discovery for Christ Hospital. He recalled that Jakubowski exhibited deficiencies that put patients in danger. He also opined that the accommodations recommended by Geller would be unreasonable for the following reasons: (1) "[Christ Hospital] would be responsible for freeing up significant time from educational and patient care training for an indefinite period of time and for an indefinite frequency;" (2) "these recommendations would require significant patient care coverage issues by faculty and residents;" (3) "the recommendations would have a significant adverse impact on the Program, particularly the training of other residents because they would be pulled from their usual responsibilities and educational opportunities;" (4) "the Program would have to free-up significant physician time so as to effectively work with Martin Jakubowski;" (5) "patients would have to be actively recruited who would be willing to participate in such a remediation program;" and (6) "sixty observed patient evaluations and the subsequent analysis, review and work with Martin Jakubowski to address the broad scope of deficiencies would take, at a minimum, months to accomplish and would significantly impact the resources available for the training of other residents in the Program." Furthermore, Swikert added "that the accommodations proposed by Lynda Geller, Ph.D. and Martin Jakubowski do not consider the significant patient care and patient safety concerns."

## II.  STANDARD OF REVIEW

"The Sixth Circuit reviews de novo a district court's grant of summary judgment." *Hamilton v. Starcom Mediavest Group, Inc.*, 522 F.3d 623, 627 (6th Cir. 2008). "Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party has met its burden, the burden shifts to the nonmoving party, who must

present some "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the district court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.  DISCUSSION

Jakubowski claims that the district court improperly granted summary judgment in favor of Christ Hospital. Specifically, he argues that the district court erred by: (1) concluding that he was not an "otherwise qualified" individual pursuant to the Disabilities Act, the Rehabilitation Act, and Ohio's discrimination laws; (2) impermissibly weighing evidence and deciding that the proposed accommodations were not reasonable; (3) finding that no genuine issue of material fact existed as to whether Christ Hospital engaged in a good faith interactive process to accommodate his disability; (4) failing to afford reasonable inferences in his favor and incorrectly concluding that Christ Hospital satisfied its burden of proof regarding the "direct threat" defense; and (5) concluding that the proposed accommodations created an undue hardship. In response, Christ Hospital claims that: (1) no reasonable accommodation existed; (2) Jakubowski's proposed accommodations posed an undue hardship for Christ Hospital and a direct threat to Jakubowski's patients; (3) Christ Hospital engaged in the interactive accommodation process in good faith with Jakubowski; (4) Christ Hospital's decision to terminate Jakubowski was based on his poor performance and patient safety; and (5) Jakubowski's concealment of his past, failed residencies at other hospitals was reason enough for him to be terminated.

## A.        The Americans with Disabilities Act

As an initial matter, analysis of claims made pursuant to the Americans with Disabilities Act applies to claims made pursuant to Ohio Revised Code § 4112.02 and the Rehabilitation Act. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 872 (6th Cir. 2007) (citation omitted) (applying Americans with Disabilities Act analysis to claims made pursuant to Ohio Revised Code § 4112.02); *Doe v. Woodford Cnty. Bd. of Educ.*,

213 F.3d 921, 925 (6th Cir. 2000) (the Sixth Circuit discusses claims under the American with Disabilities Act and the Rehabilitation Act concurrently "because the purpose, scope, and governing standards of the 'acts are largely the same, cases construing one statute are instructive in construing the other'" (quoting *McPherson v. Michigan High School Athletic Ass'n, Inc.*, 119 F.3d 453, 460 (6th Cir. 1997))). Therefore, the following discussion of the Americans with Disabilities Act applies to all of Jakubowski's claims.

Pursuant to section 12112(a) of the Act, an employer may not discriminatorily terminate an otherwise qualified individual on the basis of his disability. One form of discrimination occurs when an employer fails to make "reasonable accommodations" to an employee's known disability, unless those accommodations would cause "undue hardship" to the employer. 42 U.S.C. § 12112(b)(5)(A) (2006). "To recover on a claim of discrimination under the Act, a plaintiff must show that: 1) he is an individual with a disability; 2) he is 'otherwise qualified' to perform the job requirements, with or without reasonable accommodation; and 3) he was discharged solely by reason of his handicap." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996).

The district court found that Jakubowski's Asperger's was a disability for purposes of the Act. This conclusion is not disputed by Christ Hospital. Therefore, the issues on appeal concern whether Jakubowski was an otherwise qualified individual for purposes of the Act, which, in turn, depends on the interactive accommodation process between him and Christ Hospital.

**B.     Reasonable Accommodations and Otherwise Qualified Individuals**

Jakubowski claims the district court erred by concluding that he was not an "otherwise qualified" individual. "The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (2008). Essential functions are "fundamental job duties of the employment position the individual with a disability holds." 29 C.F.R. § 1630.2(n)(1) (2010). "[C]onsideration

shall be given to the employer's judgment as to what functions of a job are essential . . . ." *Id.*

Christ Hospital identified communicating with professional colleagues and patients in ways that ensure patient safety as an essential function that Jakubowski must be able to perform. Based on the uncontroverted evidence in the record, it appears that many healthcare professionals work together to care for a single patient. The ultimate success of that care requires the patient, physicians, nurses, and technicians to communicate clearly with each other, or else, patients could be harmed or even die. Furthermore, as the employer, Christ Hospital's identification of these functions as essential should be given some consideration. *See* 42 U.S.C. § 12111(8). Accordingly, we agree that there is no dispute that these functions are essential to the work of a family practice physician residency training program. Because Jakubowski admittedly had difficulty performing these functions, some kind of accommodations would be necessary for him to continue his work. *See id.* § 12112(b)(5)(A). Thus, whether Jakubowski was a qualified individual depends on whether he proposed a reasonable accommodation to account for his disability.

## C.    Jakubowski's Proposed Accommodations and the Essential Functions of His Position

If a disabled employee requires an accommodation, the employee is saddled with the burden of proposing an accommodation and proving that it is reasonable. *Monette*, 90 F.3d at 1183. Furthermore, the plaintiff has the burden of proving that he will be "capable of performing the essential functions of the job with the proposed accommodation." *Id.* at 1184. Reasonable accommodations may include

> making existing facilities used by employees readily accessible to and usable by individuals with disabilities, job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9).

The accommodations that Jakubowski proposed were for "knowledge and understanding" of the hospital physicians and staff. He argued that he would be capable of communicating with them effectively if they knew of his condition and its symptoms and triggers. However, he did not address how this accommodation would improve his communication and interaction with patients, which are parts of the essential function of a family practice resident. Instead, he explained that he would work individually to improve his clinical skills with patients without going into detail as to how he would accomplish this feat. A physician must be able to talk to patients, discern their ailments, and describe treatments to them. Jakubowski's performance evaluations often rated his abilities to communicate with patients and gather information from them as deficient. Because the accommodations—that Jakubowski had the burden to propose—do not address a key obstacle preventing him from performing a necessary function of a medical resident, he has not met his burden under the Act of proving he is an otherwise qualified individual for the position. *See Monette*, 90 F.3d at 1184.

**D.    The Interactive Accommodation Process**

"To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the [employee]." 29 C.F.R. § 1630.2(o)(3) (2010). "This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Id.* Both parties must participate in this process and do so in good faith. *Kleiber*, 485 F.3d at 871. Parties should not obstruct the process, or refuse to participate. *Id.* An employee has the burden of proposing an initial accommodation, and the employer has the burden of showing how the accommodation would cause an undue hardship, but the employer is not required to propose a counter accommodation in order to participate in the interactive process in good faith. *See, e.g.*, *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1108, 1110 (6th Cir. 2008) (discussing the interactive process but not requiring that the employer make a counter proposal after rejecting the employee's proposed accommodations). Of course, taking the extra step of proposing counter accommodations may be additional evidence of good faith. See *Kleiber*, 485 F.3d at 872 (noting that the employer's visits to the

manufacturing line to try to identify appropriate jobs for the employee was evidence of participating in the interactive process in good faith). If an employer takes that step and offers a reasonable counter accommodation, the employee cannot demand a different accommodation. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004). An employer has sufficiently acted in good faith when it readily meets with the employee, discusses any reasonable accommodations, and suggests other possible positions for the plaintiff. *See Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 557 (6th Cir. 2008).

Jakubowski contends that Christ Hospital did not act in good faith because it did not offer him a remediation program similar to the one offered to the previous, unnamed resident who exhibited similar deficiencies. Importantly, Jakubowski did not request a remediation program at the accommodation meeting with Christ Hospital. Only as part of this litigation did he contend that Christ Hospital should have volunteered this option.

Christ Hospital, through Diller, met with Jakubowski to discuss his proposed accommodations, and told him that the hospital lacked sufficient resources to comply. Diller also offered to help him find a pathology residency because it would involve less patient contact, thus, accommodating what Diller saw as one of Jakubowski's weaknesses. Because Christ Hospital met with Jakubowski, considered his proposed accommodations, informed him why they were unreasonable, offered assistance in finding a new pathology residency, and never hindered the process along the way, we agree that there is no dispute that Christ Hospital participated in the interactive accommodation process in good faith.

## IV. CONCLUSION

Jakubowski's Asperger's causes symptoms that are, in the very least, less than ideal for the successful practice of medicine. Because of his disorder, he has extreme difficulty communicating with colleagues and patients. This difficulty has led to dangerous possibilities in the past, and multiple physicians that have worked with him professionally have noted his shortcomings. Although he proposed accommodations to help him overcome his disability, they did not address every essential function that a

resident must be able to perform. Additionally, it appears that Christ Hospital acted in good faith throughout the interactive accommodation process, thereby fulfilling its duty. Therefore, we **AFFIRM** the district court's grant of summary judgment in favor of Christ Hospital and Diller.

---

**CONCURRING IN THE JUDGMENT**

---

COLE, Circuit Judge, concurring.  Though I concur in the majority's judgment I write separately because my view of a disability plaintiff's burden under the Americans with Disabilities Act ("ADA") differs from that of my colleagues.

The majority finds that Jakubowski's claim cannot proceed to trial because he has not put forth evidence sufficient to show that he is qualified to be a family practice resident with reasonable accommodation.  While I agree with this conclusion, the majority's analysis incorrectly finds fault in Jakubowski's failure to propose to Christ Hospital an accommodation robust enough to address all of his Asperger's related deficiencies at a meeting between Jakubowski, his attorney and Christ Hospital, which was held prior to his termination, a little less than three weeks after he was diagnosed with Asperger's, and before he filed suit.  By evaluating and rejecting Jakubowski's claim based on his initial accommodation request for knowledge and understanding of Jakubowski's disability from his hospital coworkers, rather than the more comprehensive accommodations Jakubowski set outs through expert testimony in opposition to summary judgment, the majority holds that an ADA discrimination plaintiff must always muster a trial-ready accommodation proposal for his employer prior to termination (or any other adverse employment action) to prove that the employer unlawfully discriminated against the employee based on his disability.

An employer violates the ADA by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee."  42 U.S.C. § 12112(5)(A).  We have interpreted this language to require an ADA plaintiff to make a threshold showing that he is qualified for the relevant position with reasonable accommodation.  *See Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1183 (6th Cir. 1996).  As the ADA demands that the employee's disability be "known" to the employer for liability to attach, a plaintiff must generally also have informed his employer of his disability and requested *an* accommodation prior to the time at which an employer takes adverse action against a

disabled employee. *See Monette*, 90 F.3d at 1186 n.13 (requiring a plaintiff to show "actual or constructive knowledge of the disability as part of a *prima facie* case") (internal quotation marks omitted); *Crocker v. Runyon*, 207 F.3d 314, 319-20 (6th Cir. 2000) (employer has no obligation to offer accommodation where employee never requested one) (citing *Kaltenberger v. Ohio College of Podiatric Med.*, 162 F.3d 432, 437 (6th Cir. 1998)).

But we have never squarely held, as the majority does today, that the sufficiency of an ADA plaintiff's showing that he is otherwise qualified must be analyzed exclusively in light of the scope of the accommodation he requested from his employer prior to his termination from his position, even where more ample evidence that a plaintiff is otherwise qualified or that a defendant acted with discriminatory intent, emerges through discovery. The onus to prove—as a matter of law—that an ADA plaintiff can do the job with the right accommodation is triggered by the filing of a discrimination lawsuit, not by the prospect of termination. *See, e.g.*, *Monette*, 90 F.3d at 1183 (describing a disability plaintiff's burden to propose a reasonable accommodation in the context of a discrimination lawsuit). To hold otherwise is counter to the ADA, which forbids employers from discriminating "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). The majority's rule impliedly assumes that if the plaintiff does not make an affirmative showing to the employer—prior to termination—that he is a qualified individual with his proposed reasonable accommodation, then the employer necessarily could not have acted with discriminatory intent in violation of the ADA when it fired him. Yet the fact that an employee does not perfectly convey to his employer the precise accommodation that would allow him to do his job prior to termination does not mean, as a rule, that the *employer* did not know that the employee could perform his work with a reasonable accommodation. If an employer was aware of its own accord that a person was otherwise qualified, a jury could, given other facts consistent with discrimination, permissibly infer that such an employer had acted with discriminatory intent in terminating the employee.

Jakubowski's case is just such an instance where the employer—a teaching hospital—is likely to be in a better position to know what accommodations to his

Asperger's symptoms could make him otherwise qualified, than Jakubowski is. But the majority's rule would render whatever inferences of discriminatory intent a jury could draw from any facts related to Christ Hospital's knowledge irrelevant because Jakubowski did not ask Christ Hospital for the right accommodations before he was fired. Of course, such circumstantial evidence would not relieve the plaintiff of his burden to show at trial that he is qualified for the position with reasonable accommodation—whatever that proves to be—but nothing in the ADA or our prior holdings shackles a plaintiff to his initial, pre-termination proposed accommodation as he attempts to clear this significant evidentiary hurdle.

More pointedly, ADA regulations anticipate that an employee may not be in the position to know what a reasonable accommodation to his condition is; they require that the employee and the employer engage in an interactive process with the end of jointly determining what accommodations are possible and adequate. *See Kleiber*, 485 F.3d at 871 (quoting 29 C.F.R. § 1630.2(o)(3)). The majority holding would undermine the force of this mandatory interactive process by incentivizing employers to withhold potential accommodations in the hopes that the employee will be held to his initial and legally inadequate accommodation in subsequent litigation.

Setting these points of law aside, however, I agree with the majority's conclusion that Jakubowski has failed ultimately to show that he is otherwise qualified. In opposition to summary judgment, Jakubowski attempted to meet that burden by submitting evidence of Asperger's accommodations beyond the "knowledge and understanding" which he initially proposed to Christ Hospital prior to his termination. Nonetheless, Jakubowski's claim fails because even with those additional accommodations (which *do* address all the essential job functions that a family practice medical resident must perform) he has not shown that he was otherwise qualified to be a family practice resident. The fatal flaw is Jakubowski's expert testimony. Though the expert report proposes accommodations that might remedy the performance problems that Christ Hospital cited in its termination of Jakubowski, nothing in the report—or elsewhere in the record—provides a reasonable jury with a basis to conclude that these accommodations would actually succeed in remedying Jakubowski's Asperger's-related

job deficiencies.  Because the evidence of the proposed accommodations' likelihood of success is too attenuated for a jury to find in Jakubowski's favor, summary judgment for Christ Hospital is appropriate.