**Troy PESTERFIELD, Plaintiff–Appellant,**

v.

**TENNESSEE VALLEY AUTHORITY; Charles Dean, Defendants,**

**Marvin T. Runyon; John Waters, Defendants–Appellees.**

**No. 90–6308.**

United States Court of Appeals, Sixth Circuit.

Submitted July 29, 1991.

Decided Aug. 12, 1991.

Peter Alliman, Lee, Alliman & Carson, Madisonville, Tenn., for plaintiff-appellant.

Edward S. Christenbury, General Counsel, Justin M. Schwamm, Sr., Asst. Gen. Counsel, Thomas F. Fine, Sr. Litigation Atty., Helen DeHaven, Tennessee Valley Authority, Knoxville, Tenn., for defendants-appellees.

Before MARTIN and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Plaintiff-appellant, Troy Pesterfield, appeals the district court's judgment concluding that defendant-appellees, Tennessee Valley Authority ("TVA"), Martin T. Runyon, and John Waters,[1] did not violate the Rehabilitation Act of 1973, 29 U.S.C. §§ 791, 794 ("the Act"). For the following reasons, we affirm.

I.

In 1963, TVA hired plaintiff Troy Pesterfield as an iron worker apprentice and employed him as an hourly blue collar construction worker until he injured his ankle on the job on March 11, 1977. The injury resulted in surgery and permanent medical constraints on his ability to perform further construction work. In February 1978, TVA's Rehabilitation Section found plaintiff work in a temporary annual position as a tool room attendant at the Bull Run Steam Plant. This work was largely sedentary and required little lifting.

For the first year he held the job of tool room attendant, plaintiff performed satisfactorily. In 1979, plaintiff began to have a problem with chronic tardiness and on one occasion received a warning letter from his supervisors when he failed to notify them that he would not be at work because of the weather. Plaintiff was also admonished for not adequately administering the plant's tool check-out procedure and for

being uncooperative and discourteous to co-workers. Maintenance supervisor William Stanfield counseled plaintiff on these deficiencies in February 1979 and again in December 1979. On January 24, 1980, plaintiff was found asleep on the job by his supervisors and was given another warning.

In February 1980, plaintiff began to complain of nervousness and anxiety on the job related to what he perceived to be harassment by his superiors. He was referred by his rehabilitation counselor to psychological counseling and began receiving treatment by a private psychiatrist, Dr. Raymond L. Paine.

On April 9, 1980, plaintiff was hospitalized by Dr. Paine for a combination of mental and physical reasons and entered St. Mary's Medical Center in Knoxville for psychiatric treatment. He remained hospitalized for five weeks and afterwards continued to see his private psychiatrist regularly. He continually insisted that his psychiatric condition was caused by harassment on the job by his supervisors.

Following his hospitalization, plaintiff at first considered filing a disability retirement claim based on his mental difficulties; however, he was informed that he was not eligible for disability retirement from TVA because he did not have the required five years service as an annual employee. Plaintiff then indicated his intention to return to work. Thereafter, TVA's Rehabilitation Department requested that Dr. Paine submit a medical summary and recommendation regarding plaintiff's ability to return to work to Dr. Warren Osborne, TVA's Chief of Eastern Area Medical Services. In a letter dated June 17, 1980, Dr. Paine submitted his recommendation as follows:

To Whom It May Concern:

Mr. Pesterfield was first seen in my office on March 11, 1980. He presented with symptoms of depression including sad mood, crying spells, nervousness, and low energy at home and work. Spe-

---

**1.** Defendants Martin T. Runyon and John Waters were the incumbent members of the TVA Board of Directors, who were sued in their official capacities.

cific suicidal ideation was denied, but there were vague references to the possibility if his condition failed to improve. He also complains of frightening nightmares. His symptoms seem sufficiently severe to warrant the beginning of tricyclic antidepressant treatment. Mr. Pesterfield seemed to improve, but shortly after initiating the medication he experienced episodes of rapid heart beat at work which were documented by the nurse. The antidepressants were discontinued although another incident of rapid heart beat and severe anxiousness occurred resulting this time in the patient's wife bringing him to the office for emergency consultation. At this time, she documented his incapacity to function and the decision was made to hospitalize him at St. Mary's for more vigorous psychiatric intervention. After a thorough review by internal medicine, antidepressant treatment was again pursued. His symptoms improved to the point that the prospect of returning home and to work was imminent. In spite of improvement in other areas, whenever work was mentioned Mr. Pesterfield would become visibly anxious and often spontaneously break into tears. The complex of feelings and ideas around this area would not resolve itself. A period of post-hospital convalescence did not help, with his condition remaining essentially the same. At the present time, he seems unable to return. He feels very inadequate secondary to diminished physical capacities surrounding his past back, ankle, and eye problems. Additionally, in his thinking he seems deeply concerned about payment or compensation surrounding time when he was in the hospital for the above mentioned injuries. He claims all injuries were sustained while working. He continues to hold the belief of being victimized by "company policy" and fears that he will be retired without just compensation. He is especially concerned about a recent grievance against him for being found asleep on the job. He thinks the hearing will result in his dismissal and feels that his explanation for this problem will not receive adequate consideration. According to the patient, he was taking prescribed medication, antihistamines, which made him sleepy at the time.

In summary, what we have is a very depressed man whose self esteem is very fragile. His physical well being is essentially what he had to offer on the job and now this is damaged resulting in little or no remaining confidence in himself. I suspect he needs considerable support from a supervisory authority in order to function. If there is the slightest hint of rejection or criticism, he becomes extremely anxious and depressed.

My recommendations are as follow. First. As long as Mr. Pesterfield continues in his present state, retirement may be the best answer. If indeed compensation is an issue, a full and fair hearing with a careful detailed yet simple explanation to the patient would be helpful. Secondly. If there is any possibility of this man returning to work, it would be particularly helpful for plant authority to reach out and indicate their support for his services. Some occasional expression of support for the patient on the job from time to time would help maintain a positive and cooperative attitude.

If I can be of any further help in this matter, please let me know.

Sincerely yours,

Raymond L. Paine, M.D.

Based upon Dr. Paine's report, Dr. Osborne concluded that the plaintiff was unable to work safely and refused to clear plaintiff medically to return to work. On July 3, 1980, plaintiff burst into TVA's Eastern Area Medical office, cursing and swearing at Dr. Osborne and threatening to kill himself because Dr. Osborne had not certified to the Office of Worker's Compensation that plaintiff's psychiatric condition was job-related. Based upon Dr. Osborne's failure to clear plaintiff medically, plaintiff's supervisors terminated him for medical reasons on July 21, 1980.

After exhausting his administrative remedies with the Equal Employment Opportunity Commission ("EEOC"), plaintiff filed a complaint in the United States District

Court for the Eastern District of Tennessee, alleging violation of the Rehabilitation Act of 1974, 29 U.S.C. §§ 791, 794 alleging that he had been discriminated against on the basis of handicap.

A trial was held without a jury in which the deposition of Dr. Raymond L. Paine was submitted into evidence. Dr. Paine testified that ten years earlier he had wanted plaintiff to return to work, but that every time he pushed him to do so, he seemed unable to handle it. Although Dr. Paine had determined that plaintiff was not psychotic and did not have a thought disorder, whenever return to work was mentioned, plaintiff would become tearful, anxious and upset. Therefore, in the June 1980 letter he had sent to Dr. Osborne, Dr. Paine had indicated that at that time, it seemed that plaintiff was unable to return to work. Dr. Paine was not aware that plaintiff had attempted to return to work in June of 1980 and stated that he believed that if plaintiff could have overcome his fears, he would have been able to return to work.

On August 31, 1990, the district court filed a judgment in favor of defendants, finding that plaintiff was not a qualified handicapped individual within the meaning of the Act and that TVA had behaved reasonably when it determined that plaintiff's psychological condition could not be accommodated and terminated him for medical reasons. Plaintiff timely filed an appeal.

## II.

■ We review the decision of the district court in the present case under the clearly erroneous standard. Plaintiff does not complain that the district court misunderstood the statute or applied erroneous definitions, but instead argues that the district court erroneously found as a matter of fact that plaintiff was not able to perform the essential functions of his job with or without reasonable accommodation. Federal Rule of Civil Procedure 52(a) states:

Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.

In *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), the Supreme Court clarified the parameters of the clearly erroneous standard in the context of employment discrimination cases. The district court had found that the plaintiff had been subjected to discrimination on account of gender when she was not selected as the city recreation director. Specifically, the district court found that the plaintiff was better qualified than the male applicant who was selected, that the male members of the selection committee were biased against female candidates, and that the reasons proffered by the selection committee for the selection of the male candidate were pretextual. The Fourth Circuit reversed the district court. Reversing the court of appeals, the Supreme Court wrote:

In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues *de novo*. If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

This is so even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts.

*Id.* at 573–74, 105 S.Ct. at 1511. Thus, in the present case, the district court's factual determinations in regard to plaintiff's employability cannot be overturned unless they are clearly erroneous.

## III.

■ This court must first determine whether the district court erred in conclud-

ing that plaintiff was not a qualified handicapped person within the meaning of the Act and that TVA lawfully terminated him because it could not reasonably accommodate his psychological condition.

Section 504 of the Rehabilitation Act prohibits discrimination against an otherwise qualified handicapped individual, solely by reason of his handicap, in "any program or activity conducted by any Executive agency...." 29 U.S.C. § 794. *Consolidated Rail Corp. v. Darrone,* 465 U.S. 624, 626, 104 S.Ct. 1248, 1250, 79 L.Ed.2d 568 (1984). The initial determination which must be made under the statute is whether plaintiff is an otherwise qualified handicapped person. A handicapped person is defined as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 706(7)(B). Major life activities means "functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1613.702(c). A qualified handicapped person is one "who, with or without reasonable accommodation, can perform the essential functions of the position in question...." 29 C.F.R. § 1613.702(f); *Jasany v. United States Postal Service,* 755 F.2d 1244, 1250 (6th Cir.1985).

■ In order to establish a *prima facie* case under the Act, the plaintiff must allege and prove (1) that he is a "handicapped person" under the Act, (2) that he is "otherwise qualified" for the position sought, (3) that he was excluded from the position "solely by reason of his handicap," and (4) that the position was part of a program or activity of ... [TVA]. *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979); *Doherty v. Southern College of Optometry,* 862 F.2d 570, 573 (6th Cir.1988), *cert. denied,* — U.S. ——, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989); *Dexler v. Tisch,* 660 F.Supp. 1418, 1425 (D.C.Conn.1987).

The district court in the present case held as follows:

The court finds that the plaintiff was a handicapped individual. However, he was not otherwise qualified to return to the position of tool room attendant since he could not perform the requirements of such work. The letter of June 17, 1980 makes it clear that plaintiff could not withstand the ordinary pressures of the workplace, specifically when Dr. Paine notes that if there is the "slightest hint of rejection or criticism, he becomes extremely anxious and depressed." Dr. Osborne and TVA were entitled to rely upon the letter of plaintiff's treating physician in determining that the plaintiff was not capable of returning to work. The court also finds that the report was detailed and lengthy and that Dr. Osborne had no duty to inquire further of Dr. Paine with regard to plaintiff's ability to return to work.

In addition, the court finds that there was no reasonable accommodation which TVA could have implemented to find work for the plaintiff. The court notes Dr. Paine's statement that at the present time plaintiff seems unable to return [to work] and that he becomes extremely anxious and depressed at the slightest hint of rejection or criticism. The court is unable to imagine any jobs where plaintiff could be immunized from any criticism or other normal stresses of the workplace. To accommodate the plaintiff, TVA would have had to have placed him in a virtually stress-free environment. The court finds that such a job does not exist at the Bull Run Steam Plant and perhaps cannot be found in any workplace.

District Court Opinion, Joint App. at 24–27.

Based on Dr. Paine's June 17, 1980 letter, the district court concluded that plaintiff had a mental impairment which substantially limited his ability to work. The court also concluded that plaintiff was not a "qualified handicapped person" since he was not capable of performing the essential functions of his work. As the court stated, "Plaintiff's job of tool room attendant required at least the ability to get along with supervisors and co-workers.

Given plaintiff's inability to tolerate even the slightest hint of rejection or criticism, it would be impossible for him to perform the essential functions of his work." Therefore, the court concluded, there is no reasonable accommodation which TVA could have instituted which would have permitted plaintiff to perform the essential functions of his job.

We do not believe that these findings are clearly erroneous. Contrary to plaintiff's contention that he was perfectly capable of returning to work in June 1980 and was therefore a qualified handicapped person within the meaning of the Act, the evidence supports the district court's finding that in 1980, plaintiff presented himself as an individual incapable of performing the normal, interactive functions of his job and incapable of functioning if there was the slightest hint of criticism. The record indicates that several months after his breakdown and after he had recovered in all other respects, he still burst into tears and exhibited other signs of extreme anxiety whenever his doctor suggested that he return to work. As the district court found, Dr. Paine's medical report on plaintiff's condition was lengthy and stated he was unable to return to work. Moreover, Dr. Paine had reported that plaintiff had spoken of suicide, and plaintiff then threatened to kill himself in Dr. Osborne's presence.

The ambiguity created by Dr. Paine's deposition testimony ten years later, upon which plaintiff now seeks to rely, lies not in the report itself but in plaintiff's inexplicable resistance to psychiatric treatment concerning his work anxiety. It is clear that Dr. Paine was not able to identify any medical reason why plaintiff, who responded satisfactorily to treatment regarding other areas of his life, was apparently unable to resolve his emotional issues about his work at TVA. Dr. Paine may well have been convinced, as he later claimed, not only that plaintiff could work, but that he should return to work as soon as possible. Nevertheless, he reported to TVA that even after months of treatment, plaintiff was not psychologically capable of tolerating a working environment in which he would encounter even "the slightest hint of rejection or criticism." TVA thus requested and received from plaintiff's private psychiatrist, the doctor most familiar with his condition, a detailed report that described plaintiff's symptoms and his reaction to treatment and stated that he was unable to return to work.

We believe the district court properly concluded that TVA was entitled to terminate plaintiff because it reasonably believed, based primarily on Dr. Paine's report, it could not accommodate plaintiff's psychological condition. Section 501(b) of the Act requires federal agencies to establish affirmative action plans and also provides a private cause of action for aggrieved individuals. Section 505 provides that "[i]n fashioning an equitable or affirmative action remedy under such section, a court may take into account the reasonableness of the cost of any necessary workplace accommodation...." 29 U.S.C. § 794a(a)(1).

In the present case, however, the record demonstrates that at the time his psychological handicap appeared, plaintiff was already working in the least stressful job at the plant. It would be unreasonable to require that TVA place plaintiff in a virtually stress-free environment and immunize him from any criticism in order to accommodate his disability. For these reasons, we conclude that the district court's determinations that TVA lawfully terminated plaintiff because he could not perform the requirements of his position of tool room attendant and that TVA could not reasonably accommodate his condition are not clearly erroneous, but are well supported by the record and should be affirmed.

## IV.

We must finally determine whether the district court properly found that TVA did not intentionally discriminate against plaintiff on the basis of handicap.

The district court stated that even though Dr. Paine indicated in his 1990 deposition that TVA had misinterpreted his June 17, 1980 letter and that he, in fact, had believed that plaintiff was ready to

return to work, at the time TVA made its decision to terminate plaintiff, it did not have the benefit of Dr. Paine's testimony regarding what he actually meant in the letter. The district court found that the most reasonable interpretation of the letter was that plaintiff was not ready to return to work and that even if TVA was mistaken in its interpretation of the letter, there is no proof that TVA based its decision to terminate plaintiff on any handicap discrimination.

 Plaintiff alleges that TVA's good faith belief is irrelevant and that this court must determine whether plaintiff was in fact capable of returning to work.[2] Contrary to plaintiff's contention that he was not required to prove lack of good faith or intent to discriminate, proof of discriminatory intent is necessary to prevail. The Rehabilitation Act, as it applies to Federal employers, specifically incorporates the rights, remedies, and procedures of Title VII. 29 U.S.C. § 794a(a)(1). Title VII requires proof of discriminatory intent in cases such as plaintiff's, alleging disparate treatment rather than disparate impact. *See, e.g., Griggs v. Duke Power Co.*, 401 U.S. 424, 432–33, 91 S.Ct. 849, 854, 28 L.Ed.2d 158 (1971); *Prewitt v. United States Postal Service*, 662 F.2d 292, 306 (5th Cir.1981). The seventh circuit in *Anderson v. University of Wisconsin*, 841 F.2d 737 (7th Cir.1988), has phrased the proper inquiry in Rehabilitation Act cases.

> The Rehabilitation Act forbids discrimination based on stereotypes about a handicap, but it does not forbid decisions based on the actual attributes of the handicap. The Act replaces "reflexive reactions ... with actions based on reasoned and medically sound judgments."

*Id.* at 740.

The question is thus not whether TVA's decision that plaintiff was not employable due to his psychiatric condition was correct measured by "objective" standards. What is relevant is that TVA, in fact, acted on its good faith belief about plaintiff's condition based on Dr. Paine's opinion, and, as the district court pointed out, there is no proof to the contrary. *See Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988) ("[T]he reasons tendered need not be well-advised, but merely truthful."); *Williams v. Southwestern Bell Tel. Co.*, 718 F.2d 715, 718 (5th Cir.1983) ("The trier of fact is to determine the defendant's intent, not adjudicate the merits of the facts or suspicions upon which it is predicated."); *Jones v. Orleans Parish School Bd.*, 679 F.2d 32, 38 (5th Cir.), *modified on other grounds*, 688 F.2d 342 (5th Cir.1982), *cert. denied*, 461 U.S. 951, 103 S.Ct. 2420, 77 L.Ed.2d 1310 (1983) ("Whether the Board was wrong in believing that Jones had abandoned his job is irrelevant to the Title VII claim as long as the belief, rather than racial animus, was the basis of the discharge."); *Jefferies v. Harris County Community Action Ass'n*, 615 F.2d 1025, 1036 (5th Cir.1980) ("[W]hether HCCAA was wrong in its determination that Jefferies acted in violation of HCCAA guidelines ... is irrelevant.... [W]here an employer *wrongly* believes an employee has violated company policy, it does not discriminate in violation of Title VII if it acts on that belief."); *Fahie v. Thornburgh*, 746 F.Supp. 310, 315 (S.D.N.Y.1990) ("[T]he Bureau's honestly held, although *erroneous*, conviction that [plaintiff] was not a good employee is a legitimate ground for dismissal.") (emphasis added).

In the present case, the district court found that TVA's medical staff reasonably relied upon the medical report of plaintiff's private psychiatrist and reasonably interpreted its contents. Plaintiff has failed to prove that TVA's decision to terminate him was based upon a stereotyped attitude toward persons with psychological handicaps rather than upon a reasoned and medically supported judgment that plaintiff could not

---

**2.** Plaintiff cites *Carter v. Casa Cent.*, 849 F.2d 1048, 1053 (7th Cir.1988) for the proposition that good faith or lack of discriminatory intent are not defenses to actions brought under § 504. This statement is true only in regard to disparate impact cases. *See Alexander v. Choate*, 469 U.S. 287, 294–301, 105 S.Ct. 712, 716–720, 83 L.Ed.2d 661 (1985). Moreover, the court in *Carter* stated, "[T]he Rehabilitation Act requires only a stereotype-free assessment of the person's abilities and prospects rather than a correct decision." 849 F.2d at 1053.

444

be returned to work safely under any accommodation that TVA could make. For these reasons, the judgment of the district court is hereby AFFIRMED.