NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0424n.06

No. 11-5102

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

JOHNNIE W. BROOKS, JR.,

       Plaintiff-Appellant,

v.

DAVEY TREE EXPERT COMPANY,

       Defendant-Appellee.

_____/

FILED

*Apr 17, 2012*

LEONARD GREEN, Clerk

On Appeal from the United States District
Court for the Middle District of Tennessee

BEFORE:    MERRITT and COOK, Circuit Judges; and COX, District Judge.[*]

       **COX, District Judge**. Plaintiff-Appellant Johnnie Brooks, Jr. appeals from the order and judgment of the district court granting Defendant-Appellee The Davey Tree Expert Company's motion for summary judgment in this action under the Age Discrimination Employment Act, 29 U.S.C. § 621 *et seq*. ("the ADEA"). As explained below, because Brooks has established a prima facie case of age discrimination and has submitted sufficient evidence of pretext, we shall reverse the district court's summary judgment ruling and remand the case for trial.

_____

       [*]The Honorable Sean F. Cox, United States District Court Judge for the Eastern District of Michigan, sitting by designation.

1

## BACKGROUND[1]

Brooks began working for Morehead Tree Surgery in approximately 1980. While employed there, Brooks worked his way up to foreman, after first having worked as both a bucket operator and a climber.

In January of 1995, Davey Tree acquired the assets of Morehead Tree Surgery and Brooks became a Davey Tree employee. Brooks continued to hold a foreman position when he began working for Davey Tree. At that time, Brooks was 41 years old. Brooks was assigned to Davey Tree's Clarksville, Tennessee utility contract. Under that contract, Davey Tree engaged in the practice of line clearings for public utilities, including the clearing of tree growth from power lines, clearance of rights-of-way, and chemical brush control.

On February 2, 1995, Brooks's supervisor signed various "Certificates of Training and Demonstrated Proficiency" for Brooks as a foreman, indicating that Brooks had received training in various areas and was proficient in performing various job duties.

A foreman's job duties include conducting safety meetings or "job briefings," as well as writing time reports and other required paperwork.

In August of 2007, James Barker became Brooks's supervisor. Matthew Little served as Davey Tree's Area Manager and, at all relevant times, was Barker's supervisor.

---

[1]Because the Court is reviewing a district court's entry of summary judgment, the facts are described here in the light most favorable to the plaintiff, resolving all factual disputes in his favor. *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 520 n.1 (6th Cir. 2007), *overruled on other grounds by Gross v. FBL Fin. Servs.*, 557 U.S. 129 S.Ct. 2343, 2352 (2009).

Barker made age-biased comments to Brooks at work and a few of those instances stuck out in Brooks's mind because they "really made [him] mad." (Brooks Dep. at 116).

The first time Barker made such a comment to Brooks was early in Barker's employment with Davey Tree, during the second or third time that Barker went to see Brooks on the job. (*Id.* at 91-92). Brooks was working with a saw when Barker came up behind him, punched him in the ribs, and said, "you're too old to be doing that kind of stuff anymore." Barker was not smiling when this occurred. After Brooks responded that he could do his work "just like anybody else," Barker asked Brooks if he had his paperwork ready and said nothing else. (*Id.*).

Another incident occurred in September of 2007, while Brooks and his crew were at a safety meeting. Within earshot of Brooks and his crew, Barker said that Brooks was "too old to do his work anymore." (Brooks Dep. at 93-94).

On another occasion, Barker called Brooks "an old fart" and said to Brooks, "I still think you're too old." (*Id.* at 95-96 & 113).

Brooks testified that he did not report Barker's comments to Little because Barker and Little were "buddy-buddies," and he did not want to lose his job. (*Id.* at 97-98).

Davey Tree employee James Brice[2] testified that, on several occasions, Barker said that if Brooks "was too old to get out and do his job – or get out and do simple minimal tasks, that he didn't need to be working at Davey at all." (Brice Dep. at 32).

---

[2]This individual's name is spelled differently throughout the briefs and exhibits (i.e., Brice, Bryce, and Brys). James Brice testified that his legal name is James Martin Brice, Jr. (Brice Dep. at 5).

On January 22, 2007, Davey Tree issued a "Safety Gram," stating that at least one job briefing shall be conducted before the start of the first job of each day. In November of 2007, Davey Tree began requiring foremen to write down what they discussed during job briefings and have each crew member sign off that the job briefing was held.

Brooks was terminated following an accident that occurred on February 21, 2008. Prior to that accident, in the approximately thirteen years that Brooks worked for Davey Tree, he had received two safety violation notices.

The first safety violation notice was on June 25, 1998, when Brooks received a "Safe Practice Violation Notice," from a supervisor named Jeff Wiley. That Notice described the violation as "Tree should have been pieced down instead of 1 large trunk, Foreman has been instructed to get with utility company to drop wires in the future." (6/25/98 Violation Notice).

The second violation notice was issued by Barker on December 6, 2007. That notice marked the line "Violation Not Listed Above, Explain Below," and then stated: "Foreman has been told all safety rules & proper procedures listed above. He (John Brooks) allowed crew member to break minimum approach distance. He also allowed crew member to operate the bucket w/out safety belt." (12/6/07 Violation Notice).[3]

---

[3]While it is undisputed that Barker issued a notice on December 6, 2007, the parties disagree as to its substance. Both parties agree that it included the above statement regarding breaking minimum approach distance. They disagree as to whether Barker had also marked the line on that notice indicating "No Job Briefing Conducted." In support of its motion, Davey Tree submitted a copy of the notice with that line checked. Brooks, however, submitted an Affidavit stating: "On the 6th of December, 2007, I received a Safe Practice Violation Notice from Davey Tree issued by James E. Barker on 12/6/2007. My copy is attached hereto. It is a carbon copy clearly shows that 'no briefing conducted' was not checked at the time I was provided this document. The version offered by Defendant was altered after I was given my copy." (Brooks Affidavit at ¶ 3). The color copy of

A typical Davey Tree tree-trimming crew consists of three employees: 1) a foreman, 2) a climber, and 3) a grounds person.

There were two crews working in the Clarksville area on February 21, 2008: 1) Brooks's crew; and 2) a crew managed by foreman William Parks. Brooks was the foreman for his crew, Richard Price was the climber, and James Brice was the grounds person. The other crew consisted of foreman William Parks, climber Phil Wagenbaugh, Sr., and grounds person Phil Wagenbaugh, Jr.

On February 20, 2008, the day prior to starting work at the site, Brooks and his crew drove there to see what they were going to have to do at that site. That job was to "clear cut" (i.e., cut everything down to the ground) an area for a power line. At approximately 3:00 p.m. that day, Brooks and his crew, and Parks and his crew, walked the site but no cutting took place.

The next day, February 21, 2008, Brooks and his crew got to the site at about 7:00 a.m. It was drizzling rain. Brooks testified that he held a job briefing with his crew at approximately 7:00 a.m. Parks held his own job briefing with his crew.

While the crews were getting their chainsaws ready, Brooks and Parks walked down to the site and discussed that the job would not take very long. Brooks told Parks that Eddie Combs, the "lighting boss," was coming to the site. Brooks walked back to his truck to wait for Combs and told his crew to go down to the site with Parks.

---

the notice submitted by Brooks is identical to the copy submitted by Davey Tree – except that the "No Job Briefing Conducted" line is not checked. Because the evidence must be construed in the light most favorable to Brooks, for purposes of this motion, the notice did not indicate that Brooks failed to conduct a job briefing.

Combs arrived shortly thereafter. Combs left after 10 or 15 minutes and Brooks went back to his truck to finish some Davey Tree paperwork. Brooks testified that he had just finished his paperwork, and stepped out of his truck, when his cellular phone rang. It was a crew member calling to tell him that Parks, the foreman of the other crew, had been hit by a tree.

Brooks called Barker and advised of the accident. Barker came to the site at approximately 10:00 a.m. on February 21, 2008, and asked Brooks what happened. Brooks told Barker that Parks was cutting a tree and got hit by it. Brooks did not have any further discussions with Barker about the accident and Barker did not speak to anyone else at that time.

Brooks testified that he wrote out the job briefing document the morning of February 21, 2008, before Combs arrived at the site. He further testified that he had his crew sign the job briefing document after Barker left, between 10:00 and 10:30 a.m. Brooks and his crew then worked the remainder of the work day.

On February 21, 2008, Barker issued a Safety Practice Violation Notice regarding Brooks that checked lines stating: 1) "No Job Briefing Conducted," 2) "Not Performing Davey Exercises;" 3) "Not Completing Training Requirements;" and 4) "Violation Not Listed Above, Explain Below." The explanation on the form then stated: "On 2-21-08 John Brooks never got out of truck. Crew went down a hill – 600-700 yards to cut rightaway. No job briefing or daily exercises was done. He never got out of truck until employee got hurt. He has had 2 verbal warnings not to sit in truck." (2/21/08 Notice).

After the accident, Price talked with Barker. Barker told Price that he wanted a statement from him saying that Brooks had not given a safety meeting on the day of the accident. Price

testified that, because Brooks had given a safety meeting on the day of the accident, he would not sign a statement stating otherwise. He re-wrote the statement to say: "On 2-21-08 After Richard Parks got hurt Johnny Brooks told us to sign a Job Briefing saying we had meeting before accident." (2/21/08 Statement).

After the accident, Barker also spoke to Brice about whether Brooks conducted a job briefing on the day of accident. Although his testimony reflects that he did not believe the statement to be accurate, Brice also ultimately signed the same statement that Price had signed. Brice testified as follows:

> Q. What did you tell Mr. Barker?
> A. He asked me if John did the safety meeting. And I said yes.
>   And he said did you guys sign the safety form. And I said yes. And he goes, "When did you sign it?" I told him when we usually signed it – on our first break.
>   Then he was like, that's supposed to be done during the beginning. I was like, well, he gave us the safety meeting.
>   He goes, so, are you telling me you put your job on the line that you had the safety meeting in the beginning. And I said, "Where are you coming from with this?" And he goes, John didn't do his job. I was like, "I don't know what you want me to tell you." And he's like, "Well, did he do his job." I said I think he did his job.
>   I mean, we do this all the time. We were all there. We took the meeting. He said, "Well, we'll have to wait and see what's going on here." Then he just grabbed somebody else.

(Brice Dep. at 28). Brice testified that Barker spoke to him again before Brooks was terminated:

> Q. Did you ever have another occasion to speak with Mr. James Barker about what happened?
> A. Yes.
> Q. When?
> A. When he notified us that it looked like John was going to be terminated and he was smiling about it and giggling. I was like, okay, I don't see the humor in this.

He came over and took us, again, one by one. And he took me over and said this is the statement. And I was like, "What statement?"

He goes, this is the statement of what happened. So I read it, and I was like, "This didn't happen. It didn't happen like this."

He was like, "Well, this is how it goes. I don't want John here. He – Ronnie Kemp is not the runner of Davey Tree. He doesn't get to decide who gets to stay and who doesn't." He goes, "You want your job, this is what happened."

I have two kids. I signed it. And I told him that one day I'm going to remember the meeting. Someone's going to ask me about the truth and I'm not going to lie.

. . . .

Q. What did you understand from Mr. Barker would happen if you refused to sign that?

A. He made it clear that I would be unemployed.

(Brice Dep. at 28-30).

The accident occurred on Thursday, February 21, 2008. The next time that Brooks spoke to Barker was on Sunday, when Brooks called to see how Parks was doing. Barker told Brooks to return his keys and to call Little. Brooks then called Little. Little told Brooks that he had a choice of resigning or being fired. When Brooks asked him why he was being fired, Little told Brooks that he and the safety department had determined that if Brooks would have been down in the gully the accident might not have taken place. (Brooks Dep. at 83-84).

Brooks advised that he did not wish to resign and Davey Tree terminated Brooks. Davey Tree's interrogatory responses state that Little, upon recommendation from Barker, terminated Brooks's employment.

Davey Tree's February 29, 2008 "Change to Inactive Status" form for Brooks states that he was involuntarily discharged. That form was completed by Barker and indicated that Brooks had been terminated on February 27, 2008. The form asked whether the employee was "subjected to

disciplinary action prior to termination," which was marked Yes. The Remarks section of the form

stated:

> Employee was given written warning and 2 days off – on file. Employee failed to
> give job briefing on 2-21-08 and after employee got hurt Johnny got other crew
> members to sign job briefing. Johnny was in truck asleep and also same day of
> accident Eddie Combs came to job site and Johnny was in truck asleep. He has been
> told by supervisor not to sit in truck.

(2/29/08 Change to Inactive Status Form).

Price testified that, following Brooks's termination, Barker bragged that he had fired Brooks.

(Price Dep. at 51-52). Barker also made comments about getting rid of all the "old crew," saying

repeatedly that he was "firing the old guys and bringing in the new guys because the new guys were

more teachable and the old guys had old habits." (Price Dep. at 52).

On November 25, 2009, Brooks filed this action in the United State District Court for the

Middle District of Tennessee, alleging that he was wrongfully terminated based on his age, in

violation of the ADEA and the Tennessee Human Rights Act, T.C.A. § 4-21-101 *et seq.* ("THRA").

The district court granted summary judgment in favor of Davey Tree. Brooks timely

appealed.

## JURISDICTION AND STANDARD OF REVIEW

The district court had federal question jurisdiction under 28 U.S.C. § 1331, and we have

appellate jurisdiction under 28 U.S.C. § 1291.

We review the district court's grant of summary judgment *de novo*. *Geiger v. Tower Auto.*,

579 F.3d 614, 620 (6th Cir. 2009) (citing *Niemi v. Spring Co.*, 543 F.3d 294, 298 (6th Cir. 2008)).

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material

9

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We draw all reasonable inferences from the record in the light most favorable to the nonmoving party, and we only grant summary judgment "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Appellate courts reviewing a grant of summary judgment may affirm on any grounds supported by the record, even on grounds that are different from those considered or relied on by the district court. *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 569 (6th Cir. 2001) (citing *United States v. Allen*, 106 F.3d 695, 700 n.4 (6th Cir. 1997)).

## ANALYSIS

The ADEA prohibits an employer from failing or refusing to hire, discharging, or discriminating "'against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011) (quoting 29 U.S.C. § 623(a)(1)). "A plaintiff may establish a violation of the ADEA[4] by either direct or circumstantial evidence." *Id.*

In granting summary judgment in favor of Davey Tree, the district court assumed that Brooks could establish a prima facie case of age discrimination but concluded that he had not presented sufficient evidence from which a jury could reasonably reject Davey Tree's nondiscriminatory reason

---

[4]While his complaint asserted claims under both the ADEA and the THRA, Brooks only appeals the district court's ruling as to his ADEA claim.

for his termination. We disagree and find that Davey Tree is not entitled to summary judgment under the circumstantial evidence approach.[5]

The familiar "three-step framework developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and modified by *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), guides the analysis of age discrimination claims based upon circumstantial evidence." *Provenzano,* 663 F.3d at 811-12. "In the first step, the employee carries the initial burden of establishing a prima facie case of age discrimination; if the employee meets this burden, the second step requires the employer to respond by articulating some legitimate, nondiscriminatory reason for the adverse employment action at issue." *Id*. at 812 (citing McDonnell Douglas, 411 U.S. at 802). "Third, assuming such a response is made, the employee then bears the burden of rebutting this proffered reason by proving that it was pretext designed to mask discrimination." *Id.* (citing *McDonnell Douglas,* 411 U.S. at 804).

In order to establish a prima facie case of age discrimination under the ADEA, Brooks must show that: 1) he was at least 40 years old at the time of the alleged discrimination; 2) he was subjected to an adverse employment action; 3) he was qualified for the position; and 4) he was replaced by someone outside the protected class. *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 (6th Cir. 2010).

At issue here is the third prong of the prima facie case – whether Brooks was qualified for the position of foreman.

---

[5]Given this conclusion, we need not address Brooks's alternative argument that he can establish a violation of the ADEA by direct evidence.

"At the prima facie stage, a court should focus on a plaintiff's *objective* qualifications to determine whether he or she is qualified for the relevant job." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575 (6th Cir. 2003) (emphasis in original). The prima facie burden of showing that a plaintiff is qualified can be met by presenting "credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field." *Id*. at 576. "Although the specific qualifications will vary depending on the job in question, the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills." *Id.*

Here, Brooks has presented sufficient evidence to create a question of fact as to whether he was qualified for his position as foreman at Davey Tree. Brooks had more than 30 years of experience in the relevant industry, including 23 years of experience working as a foreman. When Davey Tree acquired the assets of Morehead Tree Surgery, Brooks became a Davey Tree employee. Brooks continued to hold a foreman position when he began working for Davey Tree and his supervisor signed various "Certificates of Training and Demonstrated Proficiency" for him as a foreman, indicating that Brooks had received training in various areas and was proficient in performing the various job duties of a foreman.

Once a plaintiff meets his burden of establishing a prima facie case, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence that the plaintiff was terminated for a legitimate, nondiscriminatory reason. *Burdine*, 450 U.S. at 254.

Davey Tree contends that Brooks was terminated because Little and the safety department determined that the accident with Parks might not have occurred if Brooks had been down in the

gully at the time of the accident, because Brooks failed to conduct a job briefing on-site, and because Brooks required his crew to sign job briefing acknowledgment only after the accident.

Brooks may show pretext either directly, by persuading the trier of fact that a discriminatory reason more likely than not motivated the employer, or indirectly, by showing that the employer's proffered explanation is unworthy of credence. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006).

A plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action by showing that the proffered reason: 1) had no basis in fact; 2) did not actually motivate the defendant's challenged conduct; or 3) was insufficient to warrant the challenged conduct. *Wexler,* 317 F.3d at 576 (citing *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)); *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Gross v. FBL Fin. Serv*s., 557 U.S. 167, 129 S.Ct. 2343, 2352, 174 L.Ed.2d 119 (2009). The first type of showing consists of evidence that the proffered bases for the termination never happened (*i.e.*, that they are factually false). With respect to the second kind of showing, "the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Manzer,* 29 F.3d at 1084. The third showing consists of evidence that other employees, particularly those not in the protected class, were not fired even though they engaged in similar conduct. *Id.*

Where a case is at the summary judgment stage, a plaintiff seeking to prove discrimination via indirect evidence must submit sufficient evidence from which a reasonable jury could conclude that the defendant's nondiscriminatory reasons for its actions are a pretext for unlawful

discrimination. *Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007). We conclude that Brooks has done so here.

"One way in which a plaintiff may demonstrate pretext is by showing that the reason given by the employer 'is ultimately found to be mistaken, foolish, trivial, or baseless.'" *Clay v. United Parcel Service, Inc.*, 501 F.3d 695, 714 (6th Cir. 2007) (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998)). Here, Brooks offers evidence that, when construed in the light most favorable to him, could establish that the proffered reason for his discharge has no basis in fact.

Little gave Brooks one reason for his termination – that Little "and the safety department" had determined that if Brooks would have been down in the gully, Parks's accident might not have occurred.

Brooks testified, however, that before he was discharged, the only conversation he had with Barker about the accident consisted of Brooks telling Barker that Parks was cutting a tree and got hit by it. Brooks also testified that Barker did not speak to anyone else when he arrived at the scene following the accident. In addition, the only conversation Brooks had with Little after the accident consisted of Little informing Brooks that he could either resign or he was being fired. In discovery, Brooks sought documents regarding any investigations done by the safety department and none were produced. Moreover, Davey Tree has not articulated how or why Little or the safety department believed the accident would have been prevented if Brooks had been in the gully at the time of the accident. Price, who was on the scene at the time of the accident, testified that, even with the benefit of hindsight, he does not see how the accident could have been prevented. Moreover, as Brooks stresses, Parks was not a member of Brooks's crew – Parks was the foreman of another crew. Thus,

Brooks was not charged with supervising Parks or conducting a job briefing with Parks. A reasonable juror could conclude that Davey Tree blamed the accident on Brooks without factual basis, as pretext for firing him.

Davey Tree responds that Brooks cannot establish pretext because Davey Tree had an "honest belief" that its termination of Brooks was proper. In doing so, Davey Tree cites several decisions from the Seventh Circuit.

"Under the 'honest belief' rule developed by the Seventh Circuit, 'so long as the employer honestly believed in the proffered reason,' an employee cannot prove pretext even if the employer's reason in the end is shown to be 'mistaken, foolish, trivial, or baseless.'" *Wright*, 455 F.3d at 707-08 (quoting *Smith*, 155 F.3d at 806). The Sixth Circuit, however, has rejected the Seventh Circuit's "bare 'honest belief' doctrine'" and instead has adopted "a modified honest-belief approach." *Id.*

Under the Sixth Circuit's modified approach, for an employer to avoid a finding that its claimed nondiscriminatory reason was pretextual, the employer "must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Id*. (citing *Smith*, 155 F.3d at 806-07). The Sixth Circuit has explained:

> In determining whether an employer "reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Id.* (citing *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089). Although we will not "micro-manage the process used by employers in making their employment decisions," we also will not "blindly assume that an employer's description of its reasons is honest." *Id*. Therefore, "[w]hen the employee is able to produce sufficient evidence to establish that the employer failed to make a reasonably informed and considered decision before taking its adverse employment action, thereby making its decisional process 'unworthy of credence,' then any reliance

15

placed by the employer in such a process cannot be said to be honestly held." *Id*. at 807-08.

*Wright,* 455 F.3d at 708 (alteration in original).

"The honest-belief rule is, in effect, one last opportunity for the defendant to prevail on summary judgment" by rebutting the plaintiff's evidence of pretext, by demonstrating that the defendant's action was not taken with discriminatory intent. *Clay*, 501 F.3d at 714-15. Once Brooks has submitted evidence showing that Davey Tree's reason for his termination was without a basis in fact, in order to avail itself of the honest-belief rule and prevail on summary judgment, the burden is on Davey Tree to "point to specific facts that it had at the time the decision was made which would justify its belief in the proffered reason." *Id*. at 714.

Davey Tree has not met that burden here. Davey Tree states that Little made the decision to terminate Brooks, but Davey Tree has not offered any deposition testimony or an affidavit from Little. Indeed, Davey Tree has not submitted any evidence that establishes the specific facts that Little had at the time he made the decision to terminate Brooks.

As further evidence of pretext, Brooks points to the age-biased remarks by Barker. On one occasion, Barker came up behind Brooks on the job, punched him in the ribs, and said, "you're too old to be doing that kind of stuff anymore." On another occasion, Barker told another crew, within earshot of Brooks and his crew, that Brooks was "too old to do his work anymore." On yet another occasion, Barker called Brooks an "old fart" and said "I still think you're too old."

Brice testified that, on several occasions, Barker said that if Brooks "was too old to get out and do his job – or get out and do simple minimal tasks, that he didn't need to be working at Davey

at all." In addition, although the comments were not made specifically about Brooks, Brice also testified that Barker "said repeatedly he was firing the old guys and bringing in the new guys because the new guys were more teachable and the old guys had old habits."

The Sixth Circuit has held that "discriminatory remarks, even by a nondecisionmaker, can serve as probative evidence of pretext." *Risch v. Royal Oak Police Dep't*. 581 F.3d 383, 393 (6th Cir. 2009). In assessing the relevancy of a discriminatory remark, the court first looks at the identity of the speaker. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354 (6th Cir. 1998). "An isolated discriminatory remark made by one with no managerial authority over the challenged personnel decisions is not considered indicative of age discrimination." *Id.* But such remarks made by individuals "who did not independently have the authority or did not directly exercise their authority to fire the plaintiff, but who nevertheless played a meaningful role in the decision to terminate the plaintiff" are relevant. *Id.* at 354-55.

The court must also "examine the substance of the discriminatory remarks in determining their relevancy to a plaintiff's claim that an impermissible factor motivated the adverse employment action taken against him or her." *Id.* at 355. Isolated and ambiguous comments are too abstract to support a finding of discrimination. *Id*. Although a "direct nexus between the allegedly discriminatory remarks and the challenged employment action affects the remark's probative value, the absence of a direct nexus does not necessarily render a discriminatory remark irrelevant." *Id.*

Davey Tree states that Little terminated Brooks on the recommendation of Barker. Thus, Barker played a meaningful role in the decision to terminate Brooks and any age-biased remarks he

17

made to or about Brooks are relevant. Moreover, the remarks Barker allegedly made to Brooks about his being too old to do his job cannot be characterized as ambiguous or abstract.

In addition, "when assessing the relevancy of an allegedly biased remark where the plaintiff presents evidence of multiple discriminatory remarks or other evidence of pretext," the remarks are not viewed in isolation and the court should be "mindful that the remarks buttress one another as well as any other pretextual evidence supporting an inference of discriminatory animus." *Ercegovich*, 154 F.3d at 356. Here, Brooks presents evidence of multiple age-biased remarks by Barker – in addition to other evidence of pretext. To the extent that Davey Tree relies on Brooks's failure to conduct a job briefing *at the work site* as a reason for termination, a reasonable jury could discount this as an after-the-fact rationalization. The policy statements in Davey Tree's Safety Gram contain no requirement that employees in charge must perform job briefings on site, *see* R. 36-2, at 136 (requiring only that the employee in charge conduct a job briefing "before they start each job" or "if significant changes, which might affect the safety of the employees, occur during the work"), and Brooks's violation notices accuse him only of failing to conduct a job briefing, with no mention of the inappropriateness of conducting a job briefing off-site.

Brooks submitted an affidavit stating that the December 6, 2007 safe practice violation notice he received from Barker did not cite him for failing to conduct a job briefing. Because his copy of the notice differs from the copy of the notice submitted by Davey Tree, if the jury believes Brooks's testimony, it could infer that the notice was altered after it had been issued, in order to make it appear as though Brooks had been previously cited for failing to conduct a job briefing. Though Davey Tree now claims that it fired Brooks for forcing his crew to sign acknowledgments of receiving job

briefings after the accident occurred, it presents no evidence to support its allegations that the acknowledgments were false or coerced. Nor does it present any evidence to suggest that Brooks's usual practice of directing the crew to sign the job briefing acknowledgments after their first break violated company policy.

The testimony from Brice and Price, as to their discussions with Barker following the accident, if believed by the jury, could also establish pretext. Price testified that he told Barker that Brooks had held a job briefing on the morning of the accident, yet Barker asked him for a statement saying that no job briefing had been held. A fair reading of Brice's testimony reflects that Brice did not want to sign even the modified statement signed by Price, because he did not believe it to be accurate, but that Barker made it clear that he would lose his job if he did not do so.

Brooks submitted sufficient evidence of pretext to survive summary judgment.

## CONCLUSION

For the foregoing reasons, we REVERSE the district court's judgment and REMAND this case for further proceedings consistent with this opinion.