**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0628n.06

No. 13-4080

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 13, 2014
DEBORAH S. HUNT, Clerk

DOUG STEWART,                          )
                                       )
    **Plaintiff-Appellant,**          )
                                       )
                                       )   **ON APPEAL** FROM THE UNITED
                                       )   STATES DISTRICT COURT FOR
v.                                     )   THE SOUTHERN DISTRICT OF
                                       )   OHIO
                                       )
KETTERING HEALTH NETWORK;              )            **O P I N I O N**
GRANDVIEW HOSPITAL,                    )
                                       )
    **Defendants-Appellees.**         )
                                       )

BEFORE:  NORRIS, CLAY, and KETHLEDGE, Circuit Judges.

**PER CURIAM.** Plaintiff Doug Stewart appeals from a grant of summary judgment to defendants, Kettering Health Network ("KHN") and Grandview Hospital ("the Hospital"). *Stewart v. Kettering Health Network*, 954 F. Supp. 2d 654 (S.D. Ohio 2013).  Plaintiff worked as a police officer at the Hospital, which is located in Dayton, Ohio, and is part of KHN.  In February 2011, KHN terminated him for allegedly kicking a restrained psychiatric patient in the head.  Plaintiff denies doing so and contends that he was fired because he was–at 59–the oldest officer on the force. His amended complaint included state and federal claims of age discrimination, retaliation, and a state-law claim for intentional infliction of emotional distress. On appeal, plaintiff focuses exclusively on his federal age discrimination claim.

1

**I.**

Plaintiff was hired by the Hospital in 2003 as a security officer. At the time, the chief was Roger Harris; he was replaced in 2009 by David Miller. That fall the Hospital was commissioned as a police department, which required all security officers, including plaintiff, to complete the Ohio Police Officer Training Academy ("OPOTA"). At the time, only plaintiff and one other officer, Jimmie Whittle, had not been certified by the OPOTA.

Miller testified that plaintiff did very well at OPOTA. Miller attended plaintiff's graduation where it was clear that "the guys liked him a lot" and he was selected as class speaker. Despite this success, however, plaintiff alleges that Miller repeatedly told him that he was too old and needed to retire. From February 2010 until his termination on March 2, 2011, plaintiff was the oldest officer on the force. He was also the oldest officer to complete OPOTA training successfully.

On February 22, 2011, plaintiff began his shift at two in the afternoon. He heard that another officer, Marty White, was having trouble with a patient in a padded examination room. Padded rooms were used for patients who might harm themselves or others. This particular individual had arrived after a "pink slip" was issued; this authorizes the staff to hold a patient for up to 72 hours in order to perform a psychiatric evaluation. The patient was visibly upset and swearing loudly.

When plaintiff arrived at the examination room, White was outside. Dr. Robert Hunter, who was nearby, asked the officers to undress the patient and put him into a hospital gown. According to plaintiff, when they attempted to remove his undershirt, the patient punched White "in the side of the temple area." The patient threw more punches and one caught plaintiff in the neck. The men

2

exchanged blows. White hit the patient "in the nose and busted his nose." Plaintiff then used his stun-gun to subdue the patient.

During this altercation, Dr. Hunter and Sergeant Jones entered the room. In a subsequent declaration, Dr. Hunter stated that, "[w]hen the situation was under control, and the patient no longer presented a physical threat to anyone, Mr. Stewart kicked the patient in the head." In the doctor's view, the kick "appeared to be purely retaliatory."

Dr. Boyce Fish was also present and signed a declaration stating that "Mr. Stewart's actions in kicking a restrained patient in the head were entirely unnecessary and unjustified." However, neither doctor saw fit to mention the kicking incident in their contemporaneous, handwritten notes of the confrontation.

Sergeant Jones notified Lieutenant Spieles of what had occurred. Spieles then informed Chief Miller who, along with Captain Molchan, investigated the incident. Molchan interviewed the doctors, Officer White, and plaintiff. In statements given by Jones and Spieles, both indicated that the doctors disapproved of plaintiff's actions. For his part, plaintiff denied kicking the patient. Molchan recommended that plaintiff be fired. According to his declaration, he did not consider plaintiff's age in making that decision.

During his deposition, plaintiff recalled a different scenario. He remembered Dr. Hunter placing his foot on the patient's head in order to avoid contact with either the patient's blood or spit. Because the patient continued to spit, plaintiff placed his foot, along with Dr. Hunter's, on the patient's head. When plaintiff allegedly told Dr. Hunter to remove his foot because the situation was under control, Hunter refused, telling plaintiff, "No. He's not gonna spit . . . on me." Plaintiff

3

attributes the injuries received by the patient to the punch he received from Officer White. After the altercation, plaintiff recalls the doctors telling him that the situation had been handled well.

Defendants cited use of excessive force as the ground for plaintiff's termination. Plaintiff strongly disagrees and alleges age discrimination was the reason. In his deposition, plaintiff testified that he had endured constant remarks about his age from Chief Miller. When plaintiff approached Miller about possibly applying for a sergeant's or lieutenant's position, for instance, Miller told him that he was too old for those duties and that he was looking for younger, better educated men. Miller also told him that he wanted "young bulls," not "old guys." According to plaintiff, Miller talked about his age so much that plaintiff heard it in his sleep. In addition, at the OPOTA graduation, plaintiff's wife recalls Molchan and Miller speaking of plaintiff contemptuously as old and embarrassing to the department.

There is no dispute that plaintiff was the oldest officer on the force. During his deposition, Chief Miller conceded that he had discussed retirement with plaintiff, but contended that he had similar conversations with all of his employees. He denied urging plaintiff to retire and rejected the suggestion that he had spoken disparagingly about age—other than to joke that "us old guys got to stick together."

Lieutenant Andy Sullivan also testified by deposition. He rarely worked the same shift as plaintiff but noted that Miller asked him to "keep an eye on him." In Sullivan's view, "it seemed like [plaintiff's] days were numbered." However, he did not recall any ageist statements made to plaintiff other than "jokes among all of us." He noted—and it is undisputed—that Miller "wanted young people in there as far as the hiring pattern." When asked directly, Sullivan stated that he

believed Miller wanted plaintiff gone because "he didn't like his temper, felt like he was short-fused," not because of his age.

Finally, plaintiff points out that Officer White was not disciplined for his role in the altercation with the patient that led to plaintiff's termination even though he was the person who broke the patient's nose. White was 36 at the time.

**II.**

We review a district court's grant of summary judgment *de novo*. *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006). A motion for summary judgment should be granted if the moving party demonstrates that there is no genuine dispute of material fact and he is entitled to judgment as a matter of law. *Id.*; Fed. R. Civ. P. 56(a).

Under the Age Discrimination in Employment Act ("ADEA"), it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff can establish such a claim by either direct or circumstantial evidence. In this case, plaintiff relied upon circumstantial evidence and therefore the district court utilized the burden-shifting framework first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The burden falls on the plaintiff first to establish a *prima facie* case of discrimination, which requires him to come forward with evidence that 1) he was a member of a protected group; 2) he was qualified for his job; 3) he suffered an adverse employment action; and 4) circumstances support an inference of discrimination. *Blizzard v. Marion*

*Technical Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)), *cert. denied*, 133 S. Ct. 2359 (2013)).

In this case, the district court concluded that plaintiff had established a *prima facie* case. It found that the first three elements had been satisfied. As to the fourth element—that he was either replaced by a substantially younger person or was treated differently than similarly-situated non-protected employees—the court concluded that he had at least raised a genuine issue of material fact. Defendants do not challenge that conclusion and we need not address it here.

When a plaintiff establishes a *prima facie* case, the burden shifts to defendants to articulate a legitimate, non-discriminatory reason for their adverse employment action. *Blizzard*, 698 F.3d at 283. As already mentioned, the reason given by defendants was plaintiff's use of excessive force. With that, the burden shifts back to plaintiff to show that the legitimate, non-discriminatory reason given is a pretext for discrimination.

Central to the analysis of pretext, and critical to the resolution of this appeal, is this circuit's adoption of a modified version of the Seventh Circuit's "honest belief" rule. *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998) (applying rule to the Americans with Disabilities Act). This court has also applied the rule in the ADEA context. *Blizzard*, 698 F.3d at 286.

We have outlined the honest belief rule as follows:

> "Pretext may be shown 'either directly by persuading the [trier of fact] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1082 (6th Cir. 1994) (quoting *Burdine*, 450 U.S. at 256, 101 S. Ct. 1089). Under the "honest belief" rule developed by the Seventh Circuit, "so long as the employer honestly believed in the proffered reason," an employee cannot prove pretext even if the employer's reason in the end

6

is shown to be "mistaken, foolish, trivial, or baseless." *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998). We have rejected the Seventh Circuit's bare "honest belief" doctrine and instead have adopted a modified honest-belief approach. *Id.* (holding that "[t]o the extent the Seventh Circuit's application of the 'honest belief' rule credits an employer's belief without requiring that it be reasonably based on particularized facts rather than on ignorance and mythology, we reject its approach"). Under this approach, for an employer to avoid a finding that its claimed nondiscriminatory reason was pretextual, "the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Id.* at 806–07 (defining standard in the context of an Americans with Disabilities Act claim); *see also Balmer v. HCA, Inc.*, 423 F.3d 606, 614 (6th Cir. 2005) (applying *Smith* rule in Title VII retaliation case). Even when the employer makes such a showing, "the protection afforded by the rule is not automatic. . . . [O]nce the employer is able to point to the particularized facts that motivated its decision, the employee has the opportunity to produce 'proof to the contrary.'" *Smith*, 155 F.3d at 807 (quoting *Pesterfield v. TVA*, 941 F.2d 437, 443 (6th Cir. 1991)).

   In determining whether an employer "reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Id.* Although we will not "micro-manage the process used by employers in making their employment decisions," we also will not "blindly assume that an employer's description of its reasons is honest." *Id.* Therefore, "[w]hen the employee is able to produce sufficient evidence to establish that the employer failed to make a reasonably informed and considered decision before taking its adverse employment action, thereby making its decisional process 'unworthy of credence,' then any reliance placed by the employer in such a process cannot be said to be honestly held." *Id.* at 807–08.

*Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707-08 (6th Cir. 2006) (citations omitted); *see also*

*Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 713-14 (6th Cir. 2007).

The district court applied the honest belief rule and reached the following conclusion:

Grandview has produced evidence that Miller reasonably relied upon the investigation of the incident when he terminated Stewart's employment. The investigation revealed that Stewart used excessive force on the patient. Further, Stewart has not identified sufficient evidence to establish that Grandview failed to

7

make a reasonably informed and considered decision. Therefore, there are no genuine issues of material fact and Grandview's legitimate, non-discriminatory reason for terminating Stewart's employment is not a pretext for discrimination.

*Stewart*, 954 F. Supp. 2d at 667.

Plaintiff points to a number of material facts that undercut the decision of the district court. First, he contends that evidence supports a conclusion that he did not use excessive force. He cites the following evidence: 1) defendants' investigators, Miller and Mochan, were not present when the incident occurred; 2) the contemporaneous written statements of Drs. Fish and Hunter made no mention of it; 3) Officer White did not report it; 4) the patient did not complain about it; and 5) the patient's injuries were not commensurate with kicking. While the subsequent declarations of the doctors and Sergeant Jones's report say otherwise, plaintiff argues that the evidence favorable to his position raises disputed material issues of fact sufficient for him to withstand summary judgment.

In a similar vein, plaintiff argues that the plethora of ageist comments made by Miller made it more likely than not that the explanation for the termination was a pretext. He directs us to *Brooks v. Davey Tree Expert Co.*, 478 F. App'x 934 (6th Cir. 2012). In that case, plaintiff Johnnie Brooks worked as a foreman for a tree-trimming company. His supervisor began to make comments like "you're too old to be doing that kind of stuff anymore" and called him "an old fart." *Id.* at 936. Brooks was terminated after an accident occurred during his watch. The district court granted summary judgment to defendant because the company put forward a non-discriminatory reason: Brooks was fired because he had not been on the job site at the moment of the accident, had failed to conduct a job briefing on-site, and required his employees to sign a job briefing acknowledgment after the accident. *Id.* at 941. We reversed the district court and found that the honest belief rule

did not apply because the company "ha[d] not submitted any evidence that establishes the specific facts that [the decision maker] had at the time he made the decision to terminate Brooks." *Id.* at 943. When coupled with the evidence of discriminatory remarks by Brooks' supervisor, we concluded that the honest belief rule, which requires a reasonable reliance on the particularized facts that were before it at the time the decision was made, did not apply.

Plaintiff analogizes his situation to *Brooks* and contends that the particularized facts available to Chief Miller did not support the decision to terminate in light of his previously expressed discriminatory animus against plaintiff. As mentioned earlier, our review of the district court's judgment is *de novo*. We agree with much of its well-reasoned opinion, particularly that plaintiff made a *prima facie* showing of age-based discrimination. We part company, however, with respect to its application of the honest belief rule. While it is true that "we do not require that the decisional process used by the employer be optimal or that it left no stone unturned," it must be reasonably informed and we will not "blindly assume that an employer's description of its reasons is honest." *Wright*, 455 F.3d at 708 (quotations omitted). Frankly, there are a number of factors here that give us pause about the honesty of defendants' belief in this case. First, as recounted earlier, there is a substantial amount of evidence that plaintiff was subjected to a number of ageist remarks; for instance, Chief Miller discouraged him from seeking a position of greater responsibility because of his age. Second, the fact that neither doctor present at the time of the incident giving rise to plaintiff's termination saw fit to mention it in his contemporaneous notes undercuts the credibility of their subsequent declarations, which constituted an integral part of the investigation. One would assume, for instance, that Dr. Fish would have immediately reported an action that he later

9

characterized as "entirely unnecessary and unjustified." Plaintiff recalled the doctors telling him that he had handled a difficult situation well, which would explain the omission of any comment in either doctor's contemporaneous report. Third, Chief Miller was one of the principal investigators into the incident giving rise to plaintiff's termination. His views about plaintiff's age, which we must accept as true given the procedural posture of this appeal, call into question his ability to serve as an impartial investigator into the alleged misconduct. In short, we conclude that plaintiff has raised sufficient issues of material fact to preclude summary judgment based upon the honest belief rule.

### III.

The judgment of the district court is **vacated** and the cause **remanded** for further proceedings consistent with this opinion.